# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

JERMAINE LAYTON CARTER,        )
                               )
           Plaintiff,          )
                               )
     v.                        )   Civil Action No. 16-1043-CFC
                               )
STEVE WESLEY,                  )
                               )
           Defendant.          )

---

Jermaine Layton Carter, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

George Thomas Lees, III, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

## MEMORANDUM OPINION

February 20, 2020
Wilmington, Delaware

CONNOLLY, U.S. District Judge

## I. INTRODUCTION

Plaintiff Jermaine Layton Carter ("Plaintiff"), an inmate at James T. Vaughn Correctional Center ("JTVCC") in Smyrna, filed this lawsuit pursuant to 42 U.S.C. § 1983. (D.I. 1) The Amended Complaint at Docket Item 18 is the operative pleading, and the matter proceeds solely against Defendant Steve Wesley ("Defendant"), former Delaware Department of Correction ("DOC") Chief of the Bureau of Prisons. Before the Court is Defendant's motion for summary judgment, unopposed by Plaintiff. (D.I. 25) Because Plaintiff had taken no action in the case, he was ordered to show cause why the case should not be dismissed for his failure to prosecute. (D.I. 28) On February 11, 2020, Plaintiff filed a response.[1] (D.I. 30)

## II. BACKGROUND

The Amended Complaint alleges that Plaintiff's constitutional rights were violated on January 25, March 26, and May 19, 2017. (D.I. 18 at 1) Plaintiff alleges he has been labeled by inmates as a serial rapist, jailhouse snitch, and homosexual and threatened with physical harm. (*Id.* at 2) He alleges that it is not safe for him to be housed with another inmate. (*Id.*) Plaintiff believes that protective custody should be available. (*Id.*) Plaintiff alleges Defendant is supposed to ensure a safe prison policy for protective custody. (*Id.* at 3) Plaintiff seeks a preliminary injunction in the form of placement in protective custody and adequate video surveillance. (*Id.*)

---

[1] The Court does not analyze whether dismissal is appropriate for Plaintiff's failure to prosecute given that summary judgment is appropriate on behalf of Defendant.

1

Defendant left his position as Bureau Chief in February 2019. (D.I. 26-1 at 2) According to the affidavit of JTVCC Warden Dana Metzger ("Metzger"), Plaintiff has been housed without a cellmate since August 27, 2018, due to his mental health status. (*Id.* at 3) Prior to August 27, 2018, Plaintiff was housed in Maximum Security Buildings. (*Id.*) In Buildings 17 and 18, inmates are housed alone and only two inmates are assigned to each recreation yard. In Building 19, an inmate could have a cellmate. (*Id.*)

In January 2017, the JTVCC began a project to install more than 700 cameras. (*Id.*) The project was completed in January 2019. (*Id.*) Now every building at JTVCC has at least two cameras on each tier. (*Id.*) In addition, there are cameras in all common areas including the yard and chow halls. (*Id.*) The cameras can be viewed in real time and are also recorded for future review. (*Id.*)

## III. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be -- or, alternatively, is -- genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials

cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

While Plaintiff filed a response to the show cause order, he did not file a response to the motion for summary judgment. The Court will nonetheless not grant the entry of summary judgment without considering the merits of Defendant's unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

## IV. DISCUSSION

Defendant moves for summary judgment on the grounds that Plaintiff provides no evidence of his personal involvement in any alleged wrongdoing. In Plaintiff's response to the show cause order, he argues that the protective custody policy should be changed so there can be a way for him to "sign on" to protective custody. (*Id.* at 30) Plaintiff's opposition (assuming he intended the response to the show cause order to stand as his opposition) consists solely of argument and is not accompanied by a sworn affidavit or signed under penalty of perjury. The opposition does not cite to the record or applicable law and does not provide any supporting evidence for consideration by the Court. Plaintiff cannot simply assert factually unsupported allegations to meet his burden at the summary judgment stage. *See Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

To establish an Eighth Amendment violation based on failure to prevent harm, an inmate must show (1) that he was incarcerated under conditions posing a substantial risk of serious harm, and (2) that a prison official was deliberately indifferent to his safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official must know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. In addition, "[an individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Here, there is no record evidence that Defendant was aware that Plaintiff has been labeled as a "a well-known serial rapist, jailhouse snitch, and homosexual" or that Plaintiff had been threatened by other inmates.[2] Nothing in the record indicates that Defendant knew of the alleged threats or disregarded an excessive risk to Plaintiff's health or safety.

Nor does the record support a finding of § 1983 liability based upon Defendant's position as a policymaker. *See Valdez v. Danberg*, 576 F. App'x 97, 102 (3d Cir. 2014) (individual policymakers may be liable under § 1983 if it shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm). Plaintiff has not identified a policy, practice or custom established or maintained by Defendant that

---

[2] Nor is there evidence that Plaintiff actually was harmed.

directly caused Plaintiff constitutional harm. Instead, it seems that Plaintiff wishes to change the current policy so that he can be housed in protective custody upon his request.

Finally, the injunctive relief Plaintiff seeks implicates decisions that prison officials, not courts, rightly make in our federal system. When a plaintiff requests an injunction that would require the Court to interfere with the administration of a state prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Hence, prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 527 (1979). The federal courts are not overseers of the day-to-day management of prisons, and the Court will not interfere in the Department of Correction's determination of an inmate's housing assignment or how it maintains prison security.[3]

---

[3] The Court also notes that the undisputed evidence is that Plaintiff has been housed alone since August 2018 due to his mental condition and that the VTCC has made changes to prison video surveillance to enhance prison security subsequent to the commencement of this action. Defendant argues that Plaintiff's request for relief is moot. But because Plaintiff could be returned to the general population and be housed with another inmate, summary judgment based on mootness is precluded under the "capable of repetition yet evading review" exception. *See Parkell v. Danberg*, 833 F.3d 313 (3d Cir. 2016).

Based upon the record evidence, no reasonable jury could find for Plaintiff. There is simply no evidence that Defendant violated Plaintiff's constitutional rights.

## VI.  CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment. (D.I. 25)

An appropriate Order follows.